# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2508

UNITED STATES OF AMERICA

V.

ALAN DORSEY,
Appellant

_____

On Appeal from the U.S. District Court, M.D. Pa.

Judge Matthew W. Brann, No. 4:22-cr-00092-001

Before: CHAGARES, *Chief Judge*, RESTREPO, and MONTGOMERY-REEVES, *Circuit Judges*

Argued: June 9, 2026; Filed: July 17, 2026
_____

NONPRECEDENTIAL OPINION*

_____

* This is not an opinion of the full Court and, under 3d Cir. I.O.P. 5.7, is not binding precedent.

RESTREPO, *Circuit Judge*. Alan Dorsey appeals the District Court's denial of his motion to suppress evidence. Because the evidence was seized during a traffic stop that was unlawfully extended, we will reverse the denial of the suppression motion, vacate Dorsey's conviction and sentence, and remand for further proceedings.

I.

On September 11, 2021, Pennsylvania State Trooper Michael Cook observed a vehicle cross the road's center line three times. Trooper Cook initiated a stop of the car, which was occupied by the driver and a passenger, Dorsey, in the front passenger seat. Trooper Cook briefly looked inside the vehicle aided by a flashlight and saw no contraband. Trooper Cook asked the driver for his license, registration, and proof of insurance. After the driver identified himself as Grayson Blake and while he searched for his registration, Trooper Cook asked Dorsey, "what's your name man?" Mobile Video Recorder ("MVR") 3:05, Dkt. No. 20. Dorsey replied, "Albert," and Trooper Cook asked, "Albert what?" to which Dorsey responded, "why? Did I do something?" MVR 3:09. Trooper Cook answered, "nah, I'm just asking, just making conversation." MVR 3:12. Dorsey asked whether he could leave the car to go to his home, which he stated was directly across the street. Trooper Cook refused the request, directed the driver to accompany him to the police vehicle, and instructed Dorsey to wait in the car.

At the police vehicle, Trooper Cook asked the driver how he knew Dorsey and the driver responded, "that's my peoples." MVR 4:10. Trooper Cook then asked if Dorsey was "wanted or something," to which the driver exclaimed, "no! Why?" MVR 4:15. Trooper Cook next questioned the driver about his travel. The driver said he was coming from

Sheetz and then corrected himself to say Snappy's. Trooper Cook told the driver he did not observe the vehicle coming from the direction of Snappy's, and the driver explained that he was picking up Dorsey. Trooper Cook asked the driver for Dorsey's last name. The driver answered that he had "no idea" and described Dorsey as "a buddy." MVR 5:10. Trooper Cook then asked the driver, "what do you call him," and the driver said "Al." MVR 5:14.

Trooper Cook next inquired into the driver's arrest history and probation status, and after checking for outstanding warrants, Trooper Cook informed the driver that he had a summary warrant for fishing without a license. He then asked the driver whether an individual involved in a prior police interaction with the driver was the driver's girlfriend and inquired whether there were guns or drugs in the driver's car, continuing to press after the driver said no. While this dialogue occurred at the police vehicle, Dorsey waited in the passenger seat of the stopped car.

Trooper Cook conducted a consent search of the car, which yielded no results. Ultimately, almost thirty minutes after the stop began, Dorsey fled after providing Trooper Cook with a false last name. Law enforcement apprehended Dorsey and found him in possession of a loaded firearm, ammunition, methamphetamine, heroin, drug trafficking paraphernalia, and $600 in cash.

A federal grand jury returned an indictment against Dorsey and Dorsey filed a motion to suppress the evidence seized during the stop. At the suppression hearing, Trooper Cook testified that while speaking with the driver at the police vehicle, he was processing the driver's information through his on-board computer system to ensure that

3

he was a licensed driver. Trooper Cook also testified that he finished running the driver's licensing and PennDOT information "shortly after" they arrived at the car and that he then searched for outstanding warrants against the driver. App. 124. Trooper Cook stated that he confirmed the driver was licensed by the time he asked about the driver's arrest history and probation status.

Upon the denial of his motion to suppress, Dorsey pleaded guilty to a charge of unlawful possession of ammunition by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He was sentenced to eighty-four months in prison followed by three years of supervised release.

II. [1]

In reviewing a ruling on a motion to suppress, this Court exercises plenary review over a district court's legal determinations and reviews its factual findings for clear error. *United States v. Ross*, 151 F.4th 487, 494 (3d Cir. 2025). We review de novo whether a traffic stop was unlawfully extended. *Id.* As the District Court denied Dorsey's motion to suppress, we view the facts in the light most favorable to the government. *Id.*

The Fourth Amendment requires that a traffic stop "be '[]reasonable' under the circumstances." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)). In *Rodriguez v. United States*, 575 U.S. 348 (2015), the Supreme Court held that an initially lawful traffic stop becomes unreasonable if it is measurably prolonged beyond the time required to address the traffic violation and attend to related safety concerns. "[C]hecking

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

4

the driver's license, determining whether there are outstanding warrants against the driver," and confirming the vehicle's "registration and proof of insurance" are typically permitted as within an officer's mission at a traffic stop. *Rodriguez*, 575 U.S. at 355. "On-scene investigation into other crimes" and "safety precautions taken in order to facilitate such detours" from the stop's mission are not permitted. *Id.* at 356. If at the moment an off-mission inquiry prolongs the stop—often referred to as a *Rodriguez* moment—the officer does not possess reasonable suspicion of independent criminal activity, this extension violates the Fourth Amendment. *Ross*, 151 F.4th at 495.

Determining the moment at which the stop veered off-mission is a context-driven inquiry, and *Rodriguez* instructs us to examine "what the officer actually did and how he did it." 575 U.S. at 357. Here, Trooper Cook testified that he had confirmed the driver's license status before inquiring into the driver's arrest history and probation status. Trooper Cook's subsequent reference to the summary warrant—information he could only have learned from a warrant check—indicates that he had checked for outstanding warrants by that point. Once Trooper Cook accomplished the "computerized check" for the driver's licensing information and warrants, "the traffic stop was effectively completed." *United States v. Clark*, 902 F.3d 404, 408, 411 (3d Cir. 2018). Trooper Cook's subsequent "repetitive," "intrusive," and "in depth," questioning, *Ross*, 151 F.4th at 501 (citation modified), about Dorsey, the driver's relationship to a woman listed in a previous police interaction, and the presence of contraband in the car "sought suspicion for criminal activity" and therefore "went beyond ordinary inquiries incident to the traffic stop," *Clark*, 902 F.3d at 411 (citation modified). *See also United States v. Garner*, 961 F.3d 264, 271

(3d Cir. 2020) (holding that questioning about "employment, family, criminal history, and other conduct unrelated to the traffic stop" was aimed at detecting criminal activity and thus "not tied to the traffic stop's mission").

We next assess whether, at the *Rodriguez* moment, Trooper Cook had a "reasonable and articulable suspicion" of criminal activity based on the totality of the circumstances to justify the extension of the stop. *Garner*, 961 F.3d at 271. The District Court erred in determining that suspicion became reasonable when Dorsey first declined to provide his last name. "[W]ithout more," an individual's "refusal to cooperate" with an officer's request "does not furnish the minimal level of objective justification" for reasonable suspicion. *Florida v. Bostick*, 501 U.S. 429, 437 (1991). And, as the Supreme Court held with respect to "stop and identify" statutes requiring individuals to disclose their name during a *Terry* stop, the police may not arrest an individual for "failure to identify himself" if the officer's request for identification was not "reasonably related to the circumstances justifying the stop." *Hiibel v. Sixth Jud. Dist. Ct. of Nev. Humboldt Cnty.*, 542 U.S. 177, 188 (2004). Even if a refusal to identify oneself could establish reasonable suspicion, Dorsey did not refuse to identify himself prior to the *Rodriguez* moment; he simply asked why Trooper Cook needed his last name and if he had done anything wrong. And Trooper Cook responded "nah, I'm just asking, just making conversation." MVR 3:12.

Because Dorsey's initial failure to provide his last name cannot alone establish reasonable suspicion, the continuation of the stop must be supported by additional indicia of suspicion occurring prior to the *Rodriguez* moment. But the other circumstances identified by the District Court are insufficient to support reasonable suspicion under the

6

totality of the circumstances. The driver's assertion that he only knew Dorsey's first name because they were just "budd[ies]" does not support reasonable suspicion. MVR 5:10. Nor did Dorsey's request to leave the stop contribute to reasonable suspicion, given that he stated that he lived across the street and complied with Trooper Cook's denial of his request. Finally, "contradictory or inconsistent" responses to officer questions about travel plans may contribute to suspicion, *United States v. Green*, 897 F.3d 173, 185 (3d Cir. 2018), but the District Court found only that the driver's answers differed from Trooper Cook's observations of the car's route—not that his statements were internally inconsistent. The driver's answers here were neither contradictory nor "sufficiently confusing" to create reasonable suspicion. *Id.* When viewed in their totality, these factors are insufficient as a matter of law to establish reasonable suspicion prior to the *Rodriguez* moment.

III.

We conclude that the traffic stop was unlawfully extended and, therefore, the District Court erred by denying suppression of the evidence. We will reverse the denial of Dorsey's motion to suppress, vacate his judgment of conviction and sentence, and remand for further proceedings consistent with this opinion.

*Counsel for Appellant*

Andrew J. Shubin [ARGUED]
SHUBIN LAW OFFICE

*Counsel for Appellee*
Christian T. Haugsby [ARGUED]
Carlo D. Marchioli
OFFICE OF UNITED STATES ATTORNEY